IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| United States of America ex rel.<br>  RAY TIMOTHY DAMPIER, | ) ) ) | |
| Petitioner, | ) ) | No. 12 C 01152 |
| v. | ) ) ) | Judge John J. Tharp, Jr. |
| RANDY PFISTER, Warden,<br>  Pontiac Correctional Center, | ) ) | |
| Respondent. | | |

**MEMORANDUM OPINION AND ORDER**

Petitioner Ray Timothy Dampier is currently incarcerated at the Menard Correctional Center in Menard, Illinois, where he is serving a sentence of twenty years for aggravated kidnapping. Between 2000 and 2009, while serving the same sentence, Dampier committed five disciplinary infractions for which a portion of his good conduct credit was revoked. Dampier now brings a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which he claims that he was denied due process when the Adjustment Committee of the Illinois Department of Corrections revoked good conduct credits. For the following reasons, the Court denies Dampier's petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

   **I.   Background**

       **A. Facts**[1]

---

[1] The facts in this opinion are principally derived from the state appellate court's opinion affirming the trial court's dismissal of Dampier's petition for mandamus. *Dampier v. Montes*, No. 4-10-0081 (Ill. App. Ct. 4th Dist. Sept. 15, 2010). The state court's factual findings are presumed to be true, and Dampier has the burden of rebutting that presumption by clear and

Between 2000 and 2009, Dampier's good conduct credit was revoked on five separate occasions as the result of five disciplinary infractions he committed while incarcerated.[2] Each revocation amounted to between three months and one year of good conduct time.

Apart from any prosecution that may be warranted, when an inmate is accused of a "major offense" in an Illinois prison his case is assigned to the Adjustment Committee. 20 Ill. Adm. Code 504.50(d)(3). The Illinois Administrative Code requires that the Adjustment Committee provide the accused inmate with written notice of the facts and charges to be presented against him, as well as an opportunity to prepare a defense. 20 Ill. Adm. Code 504.80(b) and (e). At a hearing, the inmate has the right to appear and address the Adjustment Committee. *Id.* at (f) and (f)(1). The inmate does not have the right to confront or cross-examine witnesses, although he may submit written questions, and he does not have the right to counsel. *Id.* at (h)(2) and (i). Ultimately, the Adjustment Committee "must be reasonably satisfied there is some evidence that the offender committed the offense for the individual to be found guilty." *Id.* at (j)(1). The Adjustment Committee must prepare, and all of its members must sign, a written record of the hearing, including a statement describing the reasons for a guilty finding and the recommended disciplinary action. *Id.* at (l), (l)(2), and (l)(3). Importantly, "[t]he offender shall be given a copy of the Adjustment Committee summary." *Id.* at (o).

If the Adjustment Committee seeks to revoke good conduct credit, and the amount of credit at issue exceeds thirty days, the Adjustment Committee must bring the revocation to the Prisoner Review Board, a separate entity, for approval. 730 ILCS 5/3-6-3(c); 20 Ill. Adm. Code

---

convincing evidence. 28 U.S.C. § 2254(e)(1); *Thompkins v. Pfister,* 698 F.3d 976, 983 (7th Cir. 2012). Certain procedural facts are also derived from Dampier's pleadings in state and federal court.

[2] Dampier does not dispute his guilt as to the five disciplinary infractions in his habeas petition.

107.150(c); 20 Ill. Adm. Code 1610.170(a). The Prisoner Review Board may approve or deny the revocation request, or it can reduce the amount of credit the Adjustment Committee seeks to revoke, but it cannot increase the amount of credit to be revoked. 730 ILCS 5/3-6-3(c); 20 Ill. Adm. Code 1610.170(a)(1)-(3); *see also Lucas v. Montgomery*, 583 F.3d 1028, 1029 (7th Cir. 2009) (describing separate responsibilities of Prisoner Review Board and Adjustment Committee in revocation proceedings).

Finally, the Department of Corrections must maintain a "master record file" for each inmate, including reports of disciplinary infractions and dispositions. 730 ILCS 5/3-5-1(a), (a)(5), and (b), *amended by* 2013 Ill. Legis. Serv. P.A. 98-528 (S.B. 1598) (effective Jan. 15, 2015). The file must be kept confidential, but an inmate must be "advised of factual information relied upon" by the Adjustment Committee or the Prisoner Review Board to make a determination that affects the inmate's length of confinement. *Id.* at (b). In Dampier's case, there is no evidence that his revocation proceedings transpired any differently than required by statute.

### B. Procedural History

Dampier filed a *pro se* petition for mandamus against Jorge Montes, the former Chairman of the Prisoner Review Board in Illinois, on September 21, 2009.[3] Dampier claimed that his due process rights were violated because the Prisoner Review Board failed to provide him, as well as the Department of Corrections, with factual support for Dampier's five revocations. Dampier primarily relied on an Illinois statute, 730 ILCS 5/3-5-1(b), to support his argument. In pertinent part, it provides:

---

[3] In Illinois, "inmates seeking restoration of good-time credits lost due to constitutionally infirm disciplinary hearings have a judicial remedy: they can file a complaint for an order of mandamus from an Illinois circuit court." *McAtee v. Cowan*, 250 F.3d 506, 508 (7th Cir. 2001). Dampier properly brought his claims in a petition for mandamus, which he filed in the Circuit Court of Livingston County in Illinois.

3

> If the respective Department or the Prisoner Review Board makes a determination under this Code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of factual information relied upon by the respective Department or Board to make the determination …

Dampier sought relief from the Circuit Court of Livingston County, Illinois to restore two years and six months of good conduct credit. On January 12, 2010, the court dismissed Dampier's petition for mandamus, finding that

> The information that plaintiff seeks is provided by the Adjustment Committee. The law does not require [the Prisoner Review Board] to provide a further independent factual basis. Plaintiff has no clear right to the information he is requesting.

Dampier appealed to the Illinois Appellate Court, arguing that: 1) the Adjustment Committee could not revoke good conduct credit that exceeded more than thirty days; (2) the Prisoner Review Board was required to make the determination if more than thirty days was to be revoked; (3) the Department of Corrections or the Prisoner Review Board was required to provide factual information supporting a revocation to Dampier; and (4) the Department of Corrections was required to maintain a master record file for each inmate that contained the supporting evidence for good conduct credit revocations. The Illinois Appellate Court affirmed the circuit court's dismissal of the mandamus petition on two grounds. First, the court held that laches barred Dampier's mandamus petition as it related to four of the five revocations because he did not raise his claims within six months of the Prisoner Review Board's alleged actions. As to the one remaining revocation (May 1, 2009), the court decided on the merits that 730 ILCS 5/3-5-1(b) did not require the Prisoner Review Board to "provide written reasons for revocation of good-conduct credits where the [A]djustment [C]ommittee has already provided those reasons … [and] [Dampier] has not alleged the [A]djustment [C]ommittee failed to provide him with

4

reasons for revoking his good-conduct credits." *Dampier v. Montes*, 4-10-0081 (Ill. App. Ct. 4th Dist. Sept. 15, 2010).

Dampier next filed a petition for leave to appeal to the Illinois Supreme Court, where he raised the following claims: 1) the Prisoner Review Board violated the separation of powers, as expressed in the Illinois Constitution, by ceding its duties to the Department of Corrections (Adjustment Committee); (2) the Prisoner Review Board was required to approve Dampier's revocations, and it did not; (3) the Prisoner Review Board was required to provide Dampier with factual information regarding each revocation; and (4) Defendant Montes "waived his rights to revoke [good conduct credit] when he fail[ed] to provide factual information" regarding each revocation. The Illinois Supreme Court denied Dampier's petition for leave to appeal without an opinion. *Dampier v. Montes*, 949 N.E.2d 1096 (Ill. 2011).

Dampier now brings a timely petition for a writ of habeas corpus,[4] raising the following four claims:

(1) The Adjustment Committee overstepped its authority by administering revocations in excess of thirty days, in violation of 20 Ill. Admin. Code 107.150;[5]

(2) The Adjustment Committee failed to state reasons for the revocations, in violation of 20 Ill. Admin. Code 504.80 and the Due Process Clause of the Fourteenth Amendment;

---

[4] The petition appears to be timely, which the respondent concedes. The one-year statute of limitations for filing the petition, 28 U.S.C. § 2244(d)(1)(A), began to run upon the denial of Dampier's petition for leave to appeal on May 25, 2011. At most, about 268 days had run off of the 365 day clock when the petition was filed on February 17, 2012.

[5] Dampier cites to "Ill. Adm. Code 170.150(c)." The text of Dampier's claim leads the Court to assume that he intended to cite to 20 Ill. Admin. Code 107.150(c) ("Revocation of Time and Credit"), which states, "If the amount of credit at issue exceeds 30 days … the Department shall submit its recommendation for revocation to the Prisoner Review Board for approval."

(3) The Prisoner Review Board impermissibly allowed the Adjustment Committee to handle the revocations, in violation of 20 Ill. Admin. Code 107.150(c)[6] and the Illinois Constitution; and

(4) The Prisoner Review Board failed to state its reasons for approving the Adjustment Committee's revocations, in violation of 730 ILCS 5/3-5-1, 20 Ill. Admin. Code 504.80, the Due Process Clause of the Fourteenth Amendment, and *Wolff v. McDonnell*, 418 U.S. 539 (1974).

The Court will address each of Dampier's claims in turn.

**II.   Analysis**

To be eligible for a writ of habeas corpus, Dampier must demonstrate that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see Cheeks v. Gaetz*, 571 F.3d 680, 684 (7th Cir. 2009). Challenges to the duration of a custodial sentence "are the province of habeas corpus." *Muhammad v. Close*, 540 U.S. 749, 750 (2004). Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), which applies to Dampier's petition because it was filed after AEDPA's effective date, a federal court may grant relief on the basis of a claim that has been adjudicated on the merits by a state court only if the state court proceeding: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in the light of the evidence presented in the State court proceeding." 28

---

[6] The Court again assumes that Dampier intended to cite to 20 Ill. Admin. Code 107.150(c).

U.S.C. § 2254(d).[7] A judgment is "contrary to" established federal law when the court applies a rule that contradicts Supreme Court precedent. *See Williams v. Taylor*, 529 U.S. 362, 405 (2000). "An unreasonable application occurs when a state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380 (2005) (internal quotation omitted). "[I]f it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application." *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002). This deferential standard of review comes with the burden "on the petitioner to show that the state court's determination of fact or its application of federal law was unreasonable." *Sturgeon v. Chandler*, 552 F.3d 604, 609 (7th Cir. 2009).

### A. Claims (1) and (3).

The Court first addresses Claims (1) and (3) together, since the same analysis applies to each claim.

Dampier claims that the Adjustment Committee overstepped its statutory authority by revoking Dampier's good conduct credit in excess of thirty days (Claim (1)) and that it was the responsibility of the Prisoner Review Board – not the Adjustment Committee – to administer revocations exceeding thirty days of good conduct credit (Claim (3)).

Contrary to the State's argument, consideration of Claims (1) and (3) is not barred by the procedural default rule. It is true, as the State argues, that Dampier did not raise Claims (1) and (3) in his petition for mandamus, and instead first raised Claims (1) and (3) in his intermediate

---

[7] Claims that were not adjudicated on the merits in state court proceedings, by contrast, are subject to evaluation under the general standard set forth in 28 U.S.C. § 2243, which requires federal courts to "dispose of the matter as law and justice require." *See Cheeks*, 571 F.3d at 684-85.

appeal. Under Illinois law, that failure could have resulted in dismissal of the claim by the appellate court. *See, e.g., People v. Jolly*, 374 Ill. App. 3d 499, 505 (2007) (holding that defendant forfeited claim not raised below). Nevertheless, the appellate court did not address this particular procedural default in its written opinion. A claim is only procedurally defaulted if the state court clearly and plainly relies on the default as an independent and adequate state law ground for its ruling. *See Coleman v. Thompson*, 501 U.S. 722, 730 (1991); *see also Braun v. Powell*, 227 F.3d 908, 912 (7th Cir. 2000) (the state court must have "clearly and expressly" relied on the procedural default as the basis of its ruling, otherwise the procedural default will not bar federal habeas review).

In Dampier's case, the Illinois Appellate Court based its affirmance on a different procedural default – laches – and reached the merits of one of Dampier's claims as it related to a single revocation. The state court did not even refer to the potential procedural default Dampier faced when he failed to raise Claims (1) and (3) in his mandamus petition, let alone rely on the default as the basis of its ruling. The procedural default rule is grounded in principles of comity; where the state court has not seen fit to invoke the petitioner's procedural default under state law, comity compels respect for that approach rather than effort to enforce a procedural rule the state court opted not to apply. *See Coleman v. Thompson*, 501 U.S. 722, 730-31 (1991). Accordingly, the Court concludes that Claims (1) and (3) are not procedurally defaulted.

Claims (1) and (3) are not, however, cognizable. In a federal habeas proceeding, a federal court may only consider a petitioner's claims that he is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C.A. § 2254(a). In other words, "errors of state law in and of themselves are not cognizable on habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).

8

Dampier cites solely to the Illinois Administrative Code and the Illinois Constitution as legal support for Claims (1) and (3). He does not rely on, or even cite, any federal laws in support of his first and third claims. Put another way, even if one accepts his arguments at face value—that the Adjustment Committee revoked more good time credit than it was authorized to revoke by the Administrative Code and that it was the responsibility of the Prisoner Review Board to administer the revocations since each revocation exceeded thirty days of good conduct credit—those facts would not implicate the United States Constitution or other federal laws, which have nothing to say about the limits imposed by the Administrative Code on how much good conduct credit may be revoked by one state agency or another. Claims (1) and (3) are therefore not cognizable in federal habeas review and the Court denies the claims without reaching their merits.

### B. Claim (2).

In his second claim, Dampier asserts that the Adjustment Committee failed to state reasons for good conduct credit revocations, in violation of 20 Ill. Admin. Code 504.80 and the Due Process Clause of the Fourteenth Amendment. As to this claim, Dampier cites the United States Constitution, so his claim appears, at least as an initial matter, to be cognizable in federal habeas review.

Dampier, however, did not raise this particular claim until his petition for leave to appeal to the Illinois Supreme Court. Dampier must establish that he "fully and fairly presented his claims to the state appellate courts, thus giving the state courts a meaningful opportunity to consider the substance of the claims that he later presents in his federal challenge." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005). A habeas petitioner "who has exhausted his state court remedies without properly asserting his federal claim at each level of state court review has

procedurally defaulted that claim." *Id.* (quoting *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004)).

Unlike Claims (1) and (3), which Dampier raised for the first time in his intermediate appeal, Dampier did not raise Claim (2) until his petition for leave to appeal to the Illinois Supreme Court. It is well-established that a habeas petitioner cannot raise a claim for the first time on appeal to the Illinois Supreme Court and expect federal habeas review of that claim. *See Wilson v. Briley*, 243 F.3d 325, 328 (7th Cir. 2001) ("Presenting a federal claim for the first time in a petition for discretionary review by a state's highest court will not satisfy the fair presentment requirement.") (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Since Dampier raised Claim (2) for the first time in his petition for leave to appeal to the Illinois Supreme Court – and because that court summarily denied his petition – the Court must deny Claim (2) without reaching its merits.

### C. Claim (4).

Finally, Dampier claims that the Prisoner Review Board "did not state what evidence was relied on for approving [the] [Department of Corrections (Adjustment Committee)'s] request to revoke [good conduct credit]." Pet'r's Br. 7. Dampier adds that this failure was a violation of Illinois law and his due process rights under the Fourteenth Amendment as expressed in *Wolff v. McDonnell*, 418 U.S. 539 (1974). Since Dampier raised Claim (4) at every stage of state court review and specifically referenced the United States Constitution and a Supreme Court case in his habeas petition, Claim (4) is cognizable and not procedurally defaulted. Consequently, this Court will reach the merits of Claim (4).

There are no facts in dispute, so this Court will determine whether the decision of the Illinois Appellate Court, the last state court to review the issue, "was contrary to, or involved an

unreasonable interpretation of, clearly established federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d); *Gonzales v. Mize*, 565 F.3d 373, 379 (7th Cir. 2009). The Illinois Appellate Court denied Claim (4) on its merits as it related to the revocation of Dampier's good conduct credit on May 1, 2009, the only remaining revocation not barred by laches. The court found that 730 ILCS 5/3-5-1(b) "does not require the [Prisoner Review Board] to provide written reasons for revocation of good-conduct credits where the [A]djustment [C]ommittee has already provided those reasons." 9/15/10 Order at 5.[8] The court further found that "where the [A]djustment [C]ommittee has provided written reasons supporting the revocation of good-conduct credits, section 3-5-1(b) is satisfied." *Id.* at 6.[9]

The United States Supreme Court outlined the requirements of due process in prison disciplinary proceedings in *Wolff v. McDonnell*, 418 U.S. 539 (1974). The Court held that due process requires: (1) advance written notice of the claimed violation; (2) a written statement by the fact-finders as to the evidence relied upon and the reasons for the disciplinary action taken; and (3) the ability to call witnesses and present documentary evidence in one's defense. *Id.* at 564-65. Since the State has created the right to "good time," the Court noted, the inmate is entitled to "those minimum procedures appropriate under the circumstances and required by the Due Process Clause to insure that the state-created right is not arbitrarily abrogated." *Id.* at 557; *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("Illinois inmates … have a liberty interest in their good-conduct credits that entitles them to … minimum procedures").

---

[8] The Illinois Appellate Court adjudicated the merits of Dampier's claim but it did so solely under Illinois law. The state court acknowledged, however, that Dampier raised violations of Illinois law *and* his due process rights under the Fourteenth Amendment. 9/15/10 Order at 1. Since Dampier makes the same due process argument in his petition for habeas corpus, this Court will address the merits of that argument.

[9] The court noted that Dampier did not claim that the Adjustment Committee failed to provide him with the reasons for the May 2009 revocation.

11

The crux of Dampier's argument in support of Claim (4) is that the Prisoner Review Board failed to provide him with adequate due process. In applying *Wolff* to Dampier's circumstances, and in observing the statutorily distinct responsibilities of the Adjustment Committee and the Prisoner Review Board, this Court is left with only one conclusion – Dampier's due process rights need not be satisfied by the Prisoner Review Board in this context.

After the Adjustment Committee's revocation of Dampier's good conduct credit, the Prisoner Review Board, by statute, could only confirm or reduce the amount of time recommended. 730 ILCS 5/3-6-3(c); 20 Ill. Adm. Code 1610.170(a) and (a)(1)-(3). Since the Prisoner Review Board cannot itself *deprive* an inmate of good conduct credits, the due process requirements recognized in *Wolff* do not apply. *See Lucas v. Montgomery*, 583 F.3d 1028, 1031 (7th Cir. 2009) ("the [Prisoner Review Board] cannot deprive an inmate of the liberty interest recognized by the [Supreme] Court in *Wolff*"). Without the power to deprive Dampier of his liberty, Dampier cannot successfully argue that the Prisoner Review Board owed him any due process rights in the first place. Further, although *Wolff* does apply to Dampier's proceedings before the Adjustment Committee, Dampier does not claim – as part of Claim (4) – that he was denied due process in Adjustment Committee proceedings.

It is worth noting that the statute from which Dampier derives his argument that the Prisoner Review Board owed him due process protections – 730 ILCS 5/3-5-1 (b) – is irrelevant, although the Court can see why the petitioner may not have understood this point. The statute requires the Adjustment Committee or the Prisoner Review Board to provide an inmate with "factual information relied upon" in its determinations that affect the length of confinement. This seems to support Dampier's argument that the Prisoner Review Board owed him factual support for its decision to approve the Adjustment Committee's revocations of his good conduct credit.

12

But the statute must be read in context. *See River Road Hotel Partners, LLC v. Amalgamated Bank*, 651 F.3d 642, 648-49 ("When interpreting statutory language, the meaning attributed to a phrase depends upon reading the whole statutory text [and] considering the purpose and context of the statute") (citation omitted). The context of the section of the statute on which Dampier relies pertains to confidentiality:

> *All files shall be confidential and access shall be limited to authorized personnel of the respective Department*. Personnel of other correctional, welfare or law enforcement agencies may have access to files under rules and regulations of the respective Department. The respective Department shall keep a record of all outside personnel who have access to files, the files reviewed, any file material copied, and the purpose of access. *If the respective Department or the Prisoner Review Board makes a determination under this Code which affects the length of the period of confinement or commitment, the committed person and his counsel shall be advised of factual information relied upon by the respective Department or Board to make the determination*, provided that the Department or Board shall not be required to advise a person committed to the Department of Juvenile Justice any such information which in the opinion of the Department of Juvenile Justice or Board would be detrimental to his treatment or rehabilitation.

In other words, the statute does not independently provide Dampier with a legal basis for his due process claim. Rather, it merely provides an exception to the general rule that the master record files are to be kept confidential.

The Court therefore holds that Dampier's due process rights were not violated by the Prisoner Review Board, and Claim (4) is denied on its merits.

### D. Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters

a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Dampier a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

A certificate of appealability may not issue unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a finding that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In this case, the Court believes that reasonable jurists would not debate the Court's conclusion that Dampier's habeas petition fails. Therefore, the Court declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

\*    \*    \*

For the reasons set forth above, the Court denies Dampier's petition for a writ of habeas corpus and declines to certify any issues for appeal.

Entered: October 23, 2013

John J. Tharp, Jr.
United States District Judge